# ALLEMANNIA FIRE INSURANCE COMPANY OF PITTSBURG *v.* FIREMAN'S INSURANCE COMPANY OF BALTIMORE.

### REINSURANCE; CONTRACTS.

1. Under a contract of reinsurance providing that in no event shall the reinsurer be liable for an amount in excess of a ratable proportion of the sum "actually paid" to the assured by the reinsured company, the insolvency of the reinsured company, and its inability to pay those it has insured, will not defeat a recovery by its receiver upon the contract of reinsurance; but the expression "actually paid" will be construed to mean "actually payable."

2. The locus of a contract of reinsurance made in one State, but performable in another, is in the latter State, and the contract is to be construed under its laws.

No. 1694. Submitted October 17, 1906. Decided November 20, 1906.

HEARING on an appeal by the defendant from a judgment on verdict of the Supreme Court of the District of Columbia in an action on a contract of reinsurance, a demurrer to the declaration having been previously overruled.          *Affirmed.*

The COURT in the opinion stated the facts as follows:

In the court below the Firemen's Insurance Company of Baltimore, Maryland, to the use of Francis E. S. Wolfe, Receiver, the appellee, sued the Allemannia Fire Insurance Company of Pittsburg, Pennsylvania, the appellant, upon the appellant's contract of reinsurance of property insured by the appellee, which property was consumed by the great fire in Baltimore in February, 1904.

The declaration states that the amount of losses on the property reinsured was $56,312.56, and that the appellant was liable to pay to the appellee $22,613.24 under its contract of reinsurance. The appellant demurred to the declaration. The demurrer was overruled, and upon the trial the appellee recovered a verdict of $12,613.24. The disastrous Baltimore fire had rendered the appellee insolvent, and the receiver instituted this action. At that time the appellee had paid nothing, but prior to the trial it had paid 55 per cent of its losses under the original contracts reinsured by the appellant.

The appellant raised but one question by the demurrer overruled, and, later, by the instructions which were asked at the trial and refused.

The appellant demurred to the declaration on the ground that, under the eleventh stipulation of the contract of reinsurance, the appellant was only liable for its *pro rata* share of the amount actually paid by the appellee to the insured, and because the declaration averred that the plaintiff below, by reason of its heavy losses caused by the great conflagration in Baltimore in February, 1904, had become insolvent, and had been placed in the hands of a receiver, and was and will be unable to pay its losses unless it can collect the amount due by the defendant below and by other fire insurance companies with which it had contracts of reinsurance, and, since it did not appear from the declaration that the plaintiff below had paid anything, it was not entitled to recover anything upon its contract of reinsurance by the defendant below.

*Mr. Andrew Y. Bradley* and *Mr. Charles H. Bradley,* for the appellant:

1. The same rules of construction which apply to all other contracts apply with equal force to contracts of reinsurance. *Imperial F. Ins. Co.* v. *Coos County,* 151 U. S. 452; *Home v. Mutual Safety Ins. Co.* 1 Sandf. 137; Kerr, Ins. p. 129.

2. By virtue of the provisions of paragraph 11 of the contract here sued upon, actual payment by the appellee of the whole or some part of its losses was made a condition precedent to the right of recovery against the appellant. It is readily conceded that the weight of authority is to the effect that, in the absence of some limitation or provision to the contrary, payment by the reinsured of its loss is not a condition precedent to the right of recovery against the reinsurer. It is also conceded that the insolvency of the reinsured does not relieve the reinsurer, unless that event be contemplated by or embraced in the contract of reinsurance. But in *none* of the cases in which these general principles have been enounced has there been any such provision in the contracts therein construed as is contained in the eleventh paragraph of the contract here sued upon, namely: "* * * and *in no event* shall this company be liable for an amount in excess of ratable proportion of the *sum actually paid,*" etc. The language of paragraph 11 of this contract is neither technical nor ambiguous, nor have any of the terms used therein acquired a meaning distinct from the popular sense of the same terms. They must therefore be taken and understood in their plain, ordinary, and popular sense, 2 Parsons, Contr. 7th ed. pp. 626, 628, 632. The liability of the appellant being clearly and expressly fixed by the terms of the contract, the court will not enlarge it. Kerr, Ins. pp. 729-735; *Imperial Ins. Co.* v. *Coos County, supra;* Langdell, Contr. sec. 33; Ostrander, Ins. sec. 334; Kerr, Ins. p. 740; *Braunstein* v. *Ins. Co.* 1 Best & S. 728.

3. The insolvency of the plaintiff was an event the happening of which could have been provided against by the terms of the contract. There being no such provision in the contract, it must be conclusively presumed that the parties had that event, as well as all others, in mind when they agreed that "in no

event" should the defendant be liable for an amount in excess of a ratable proportion of the sum actually paid, etc.

The fact that performance of this condition precedent is now impossible does not invalidate it, nor is the appellee relieved or discharged from its obligation.    9 Cyc. Law & Proc. pp. 625, 628.

*Mr. Wm. F. Mattingly* and *Mr. T. Wallis Blackistone* for the appellee.

Mr. Justice McComas delivered the opinion of the Court.

The only question upon this appeal is the construction of the contract of reinsurance, and especially the construction of the eleventh stipulation of that contract, which is as follows:

"Each entry under this compact, unless otherwise provided in this compact, shall be subject to the same conditions, stipulations, risks, and valuation as may be assumed by the said reinsured company under its original contracts hereunder reinsured, and losses, if any, shall be payable *pro rata* with, in the same manner, and upon the same terms and conditions as paid by the said reinsured company under its contracts hereunder reinsured, and in no event shall this company be liable for an amount in excess of a ratable proportion of the sum actually paid to the assured or reinsured by the said reinsured company under its original contracts hereunder reinsured, after deducting therefrom any and all liability of other reinsurers of said contracts, or any part thereof."

We must determine upon the demurrer whether, the appellee having become insolvent, such insolvency, under the provisions of the eleventh stipulation, relieved the appellant from all liability under its contract of reinsurance.

The appellant insisted that, by the terms of the stipulation just quoted, actual payment by the appellee of its losses, in whole or part, was a condition precedent to its right of recovery from the appellant.    It was conceded that, by the weight of

authority, payment by the reinsured of its losses is not a condition precedent to its right of recovery against the reinsurer, and also that the insolvency of the reinsured does not relieve the reinsurer from its liability.  It was urged, however, that in none of the cases supporting the propositions conceded did any of the contracts sued upon contain the additional provision which is here found, namely: "And in no event shall this company be liable for an amount in excess of a ratable proportion of the sum actually paid, etc.," and this appears to be true.

The contract of reinsurance was early adopted by the maritime nations of continental Europe.  Chief Justice Kent remarked that very little information upon this question can be found in the English books, as reassurances are rendered unlawful in most cases by the statute of 19 Geo. II. chap. 37, and that by the law of the commercial nations of the Continent the reinsurer was obliged to pay all that the first insurer ought himself to pay.  "The reinsurer has no connection or concern with the first insurance, and is at all times bound to indemnify his own insured when the other can show that he has been damnified in consequence of the first insurance;" and Livingston, J., added: "This engagement is to make good all that the first underwriter shall lose or become liable to pay." *Hastie* v. *De Peyster*, 3 Caines, 194, 195.

In a later case it was said, in speaking of the reinsured: "Their claim upon the reassurers rests upon their liability to pay the loss to the insured, not on their greater or less ability to pay it in full.  If the liability of the reassurer depend upon the insolvency or bankruptcy of the first insurer, in many cases he will not become chargeable at all, or but to a nominal amount, according to the extent of the first insurer's insolvency." *Hone* v. *Mutual Safety Ins. Co.* 1 Sandf. 152, Affirmed by the court of appeals in 2 N. Y. 235.  *New York State Marine Ins. Co.* v. *Protection Ins. Co.* 1 Story, 461, Fed. Cas. No. 10,216.

The courts treat reinsurance as a contract of indemnity to the reinsured; wherefore it is not necessary for the reinsured

to pay the loss to the first insured before proceeding against the reinsurer; nor is the liability of the latter affected by its inability to fulfil its own contract with the original insured. The liability of the reinsurer, unless specially limited by agreement, is coextensive with that of the reinsured. In seeking the intent of the parties to the contract, and construing its terms. the courts are always mindful that the policy is a contract of indemnity. In the case of a policy containing the following clause: "Loss, if any, payable *pro rata* and at the same time with the reinsured,"—it was held that by the first part of this clause the defendant was not bound to pay the full amount reinsured by its policy, but only such a proportionate amount of the loss as is in the ratio of the amount of the reinsurance to the amount originally insured. In regard to the latter part of this clause, which says the loss is payable "at the same time with the reinsured," it is not meant that actual payment by the reinsured is in fact to precede or to accompany payment by the reinsurer. "It looks to the time of payability, and not to the fact of payment." See *Blackstone* v. *Alemannia F. Ins. Co.* 56 N. Y. 107. In another case the contract stipulated that "the losses, if any, are to be payable *pro rata* to the Enterprise Insurance Company at such time and in such manner as the latter company may pay;" and Judge Sharswood said a contract of reinsurance is a contract of indemnity, and this clause must have such an interpretation as will not entirely defeat the contract. The Enterprise Company, being insolvent, had made a general assignment, and this learned judge remarked: "If the assignee can only recover from the defendants when and as he pays dividends on the assigned estate to the original insured. it is plain an endless number of suits must be the consequence: and if it had so happened that there was no assigned estate, there could be no recovery at all. I would construe the words, 'as the latter company may pay,' to mean 'as the latter company may be liable to pay.'" Affirmed. *Fame Ins. Co's Appeal,* 83 Pa. 396.

In *Ex parte Norwood,* 3 Biss. 512, Fed. Cas. No. 10,364. where the liability clause in the reinsurance contract was.

"Loss, if any, payable at the same time and *pro rata* with the insured," Blodgett, J., considered that the true meaning of the clause, and a salutary one, is that the reinsuring company stipulates that it shall not pay any more loss than the original company is liable for; that the reinsuring company is to have the benefit of deductions by reason of other insurance or salvage, which the original insuring company would have, and also the benefit of any time or delay for examination, which the first company might claim; that it is not to pay any faster than the original company, and is to have the benefit of any defense the original company would have had. So that the liability of the reinsuring company shall be coextensive only with the liability, and not with the ability to pay, of the original company. Judge Blodgett said: "It is to my mind absurd to say, if a loss occurs on one of those reinsured policies, that the company primarily liable is to have its claim against the reinsuring company limited by its ability to meet its obligations to its original holders. The very object of making the policy of reinsurance was to place the company in funds with which to make its policyholders whole, and that is defeated if the construction which is insisted upon by the assignee in this case is the true one."

In *Cashau* v. *Northwestern Nat. Ins. Co.* 5 Biss. 476, Fed. Cas. No. 2,499, the court took the same view of a similar clause, saying that under such a contract of indemnity the insolvency of the original insurer is no defense to a suit against the reinsurer, for, the court said, "otherwise, the defendant's policy would not be the contract of indemnity intended, and endless litigation might ensue."

The parties to this contract are in different States. The place where the final act is performed which is necessary to establish the relation of reinsurer and reinsured becomes, therefore, the *locus* of the contract. Its terms make plain that the *locus* of the contract we are here considering was Maryland. In that State, it is true, the statute of 19 Geo. II. chap. 37, is still in force as to reinsurance on marine risks, but the court of appeals construes in a fair and liberal spirit the contract of re-

insurance against fire.   In *Consolidated Real Estate Fire Ins. Co.* v. *Cashow,* 41 Md. 74, that court said that, from the nature of the contract of reinsurance, the insolvency of the original insurer in no wise affects or limits responsibility under it, and, in construing a clause almost identical in terms with the clause in the New York case last herein mentioned, adopts the reasoning of the New York court of appeals, and adds : "When we consider the distinct and independent nature of this contract, and that it is wholly unaffected by the insolvency of the original insurer, there is, we think, no escape from the force of that reasoning."

Mindful of the construction uniformly given, as we have shown, to such contracts of reinsurance, and of the construction which the Maryland court has given to a contract of indemnity such as we are here considering, we cannot interpret this Maryland contract to mean that the reinsurance of its policies by the appellee, which, by the import of the contract of reinsurance itself, was designed by the original insurer to protect its policyholders from its own inability to pay, was intended to defeat both, if it happened to become insolvent.

In our opinion, the additional clause in the eleventh stipulation of the contract of reinsurance before us was not intended to mean that the insolvency of the first insurer should release the reinsurer.   The word "paid," in the clause, "Losses, if any, shall be payable *pro rata* with, in the same manner, and upon the same terms and conditions as *paid* by the said reinsured company,"—means "payable" or "liability to pay."   The concluding words, "And in no event shall this company be liable for an amount in excess of a ratable proportion of the sum actually *paid* to the assured or reinsured by the said reinsured company under its original contracts hereunder reinsured, after deducting therefrom any and all liability of other reinsurers of said contracts, or any part thereof,"—does not vary the meaning so as to operate to release from liability the reinsuring company because the first insurer became insolvent.   The added words were not intended to change, and do not change, the

import of this contract of indemnity. They mean that the liability of the reinsurer is to be coextensive with the liability of the reinsured company, and are intended to protect the reinsuring company from paying more than the "sum actually payable" by the reinsured company. The words, "sum actually paid," in this collocation, providing for deducting therefrom "all liability of other reinsurers," must mean that in no event shall the reinsuring company pay more than a ratable proportion of the sum "actually payable" by the reinsured company, or, in other words, more than its ratable proportion of the actual liability to pay "on the part of the reinsured after deducting all liability of other reinsurers." The construction urged so earnestly by the counsel for the appellant would defeat this contract of indemnity. The construction we give to this stipulation as to the liability of the appellant gives effect to the contract, and is the only interpretation which preserves the vitality of the contract of reinsurance. It is the nature of the contract of reinsurance that the insolvency of the original insurer can in no wise affect or limit responsibility under it.

The judgment of the learned court below must be *affirmed, with costs, and it is so ordered.*